NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DOWN TO EARTH LANDSCAPING<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NEW JERSEY BUILDING LABORERS<br>DISTRICT COUNCIL LOCAL 595, et al.<br><br>　　　　　Defendants. | CIVIL NO. 06-578 (SRC)<br><br><br><br>**OPINION** |

**CHESLER, District Judge**

**THIS MATTER** comes before the Court on a Motion to Compel Arbitration by Defendant New Jersey Building Laborers District Council Local 595[1] ("Local 595") (docket entry # 8). The Court, having considered the papers submitted by the parties, for the reasons set forth below, and for good cause shown, **GRANTS** the Defendant's Motion and **STAYS** these judicial proceedings pending arbitration of Plaintiff's claims in this matter.

---

[1] The Defendant, in their answer to the Plaintiff's Complaint, notes that they were improperly pleaded as New Jersey Building Laborers District Council Local 595. The proper name for this entity is Laborers Local 595. (Answer at 1.)

## I.   BACKGROUND OF THE CASE[2]

The Plaintiff, Down to Earth Landscaping Company ("DTE"), is in the business of providing landscaping services.  In October 2000, DTE was hired to perform landscaping services at a medical building in East Brunswick New Jersey.  The job required experienced heavy equipment operators, and DTE contacted Local 595, a local labor union, for experienced labor.  In providing this labor, Local 595 requested that DTE execute a "Short Form Agreement" which DTE signed on October 23, 2000.

The Short Form Agreement was a single page document between an employer "desiring to employ laborers" and the union "desirous of building, developing and maintaining a harmonious working relationship" with the employer.  (Def.'s Notice of Removal at Ex. D.) Under the terms of the Short Form Agreement, the parties "agree to be bound by the terms and conditions as set forth in the Building, site and General Construction Agreement by and between the Building Laborers Local Unions and District Councils of New Jersey and various Building, Site and General Construction Contractors and Employers, which Agreement is incorporated herein as if set forth in full."  (Id.)  This additional Collective Bargaining Agreement, incorporated by reference, contains a provision that it is applicable to "all construction work that is described in this Agreement or the Manual of Jurisdiction of the Laborers' International Union of North America, which is incorporated herein by reference and any other work within the traditional jurisdiction of the Union shall be performed in accordance with the terms of this Agreement."  (Def's Notice of Removal at Exhibit F, Art. 2.20.)  It also provides that the parties

---

[2] Unless otherwise noted, the recitation of the facts in this case are drawn from the allegations contained in the Plaintiff's Complaint.

agree to submit disputes to the "New Jersey State Board of Mediation for binding arbitration on an expedited basis."  (Id.)

After the completion of the East Brunswick project, DTE had no further dealings with, and hired no additional workers from, Local 595.  In February 2005, DTE secured a commercial contract for landscaping services with Six Flags Great Adventure Amusement Park in Jackson New Jersey.  In April 2005, DTE was contacted by Local 595, who sent them a copy of the executed Short Form Agreement and demanded that union labor be hired to work on the project, pursuant to its terms.  DTE refused and subsequently completed this project, without the use of any union labor, in June 2005.  On April 4, 2005, Local 595 requested the New Jersey Board of Mediation mediate this dispute between them and DTE over the use of non-union labor.  On January 16, 2006, DTE filed suit in state court seeking to restrain further proceedings in the arbitration until a court could render a determination on whether the Short Form Agreement is a valid contractual agreement between DTE and Local 595 and whether the executed Short Form Agreement requires the dispute to be submitted to binding arbitration.  On February 8, 2006, Local 595 removed the case to this Court pursuant to 28 U.S.C. § 1441(b) on the grounds that DTE's claims arise under the Labor Management Relations Act, 29 U.S.C. § 185, *et seq.* which gives this Court jurisdiction over the claim pursuant to 28 U.S.C. § 1331.  On March 27, 2006, Local 595 filed the current Motion to Compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-10.

## II.  DISCUSSION

Motions to stay proceedings and to compel arbitration are reviewed under the summary

judgment standard set forth in FED.R.CIV.P. 56(c).  See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 n. 9 (3d Cir.1980) ("Application of [the summary judgment] standard to [arbitration determinations] is appropriate inasmuch as the district court's order to arbitrate is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate."); Bellevue Drug Co. V. Advance PCS, 333 F.Supp.2d 318, 322 (E.D.Pa. 2004) ("[m]otions to compel arbitration are reviewed, in the first instance, under the well-settled summary judgment standard set forth in FED.R.CIV.P. 56(c)"); E-Time System, Inc. v. Voicestream Wireless Corp., 2002 WL 1917967 at *4 (E.D.Pa. Aug. 19, 2002) ("When confronted with a motion to stay proceedings pursuant to 9 U.S.C. § 3, the appropriate standard of review for the district court is that employed in evaluating motions for summary judgment under FED.R.CIV.P. 56(c).") (citing Par-Knit, 636 F.2d at 54 n. 9). Consistent with this standard, a party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996).  In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

     Once the moving party has properly supported its showing of no triable issue of fact and

of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 247-48. The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993).

     The Federal Arbitration Act (FAA) applies to all arbitration agreements involving interstate commerce, including the Short Form Agreement at issue in this case. See Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 55-56 (2003). "The effect of the [FAA] is to create a body of federal substantive law of arbitrability, applicable to any agreement within the coverage of the Act." Moses H. Cone Mem'l Hosp. V. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). The FAA also "establishes a strong federal policy in favor of compelling arbitration over litigation." Sandvik AB v. Advent International Corporation, 220 F.3d 99, 104 (3d Cir. 2000).

     Under the FAA, "a court must decide whether an agreement to arbitrate exists before it may order arbitration." Sandvik, 220 F.3d at 107. There is an important distinction between contracts that are "asserted to be 'void' or non-existent . . . and those that are merely 'voidable.'" Id. Where a party claims that a contract containing a broad arbitration agreement is 'void' by challenging the very existence of a contract that they claim they never agreed to, the issue of whether a contract existed is a matter for the Court to determine before ordering arbitration.

Sandvik, 220 F.3d at 106-07 (citing Three Valleys Municipal Water District v. E.F. Hutton Co., Inc., 925 F.2d 1136, 1140 (9th Cir. 1991)).  Where, however, a party challenges a contract with a broad arbitration clause as 'voidable,' such as claiming that it was induced by "'fraud, mistake, or duress, or where breach of a warranty or other promise justifies the aggrieved party in putting an end to the contract,'" issues of contractual validity are to be determined by the arbitrator. Id. at 107 (quoting Three Valleys Municipal Water Dist., 925 F.2d at 1140 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 7 cmt. b (1981))).

    The crux of the Plaintiff's claim in the present case is that the Short Form Agreement between them and Local 595 is invalid because it "does not state exactly what the parties obligations were to one another, the starting and ending date of their duties to one another, how often Plaintiff was required to employ union laborers and what the consideration was for Plaintiff to enter into such an agreement."[3]  (Pl. Motion to Remand, p.1)  The Plaintiff does not contest

---

[3] While the Short Form Agreement is indeed short on specific terms and conditions, the documents it incorporates by reference are somewhat more detailed.  For example, while the Short Form Agreement does not contain any termination date, the fifty eight page Collective Bargaining Agreement, which was incorporated into the Short Form Agreement by reference, states that it terminates on April 30, 2002.  (Def. Notice of Removal, Ex. E at 56, ¶ 22.10.)

    The Collective Bargaining Agreement also contains detailed terms regarding termination and automatic renewal of the agreement and its terms.  According to this document, unless the employer gives "written notice to the Laborers' International Union of North America, Eastern Region office, of such intention [to terminate the Agreement] ninety (90) days prior" to this termination date, the Collective Bargaining Agreement "continue[s] in full force and effect after the termination date . . . from year-to-year."  (Id.)  In order to terminate the Collective Bargaining Agreement, "the Employer shall give written notice at least thirty (30) days prior to April 30th of each succeeding year and, if said thirty (30) days notice is given, the Agreement shall terminate on April 30th of any year following the giving of such notice."  (Id.)  It is not claimed that MDC provided any written notice to Local 595 to terminate their agreement pursuant to these terms.

    The Collective Bargaining Agreement also states that "the Employer agrees to be bound by the wage and benefit rate schedules of any new Agreement made by the Union and the Building Contractors Association of New Jersey."  (Id.)  This original Collective Bargaining Agreement was replaced by a new one that went into effect on May 1, 2002 and terminates at

that DTE signed the Short Form Agreement, nor do they contest that the agreements incorporated by reference to the Short Form Agreement contained an otherwise valid arbitration agreement. Their claim, instead, is that the Short Form Agreement and its terms (including the arbitration agreement) are not applicable to DTE's jobs beyond the East Brunswick project.

This is a challenge that the Short Form Agreement, and its terms, are voidable.[4] DTE does not contest that they entered into the Short Form Agreement in order to obtain union labor for their East Brunswick project. They claim that they agreed to be "bound by the terms and conditions of a Building, Site and General Construction Agreement by and between the Building Labor Local Unions and District Council of New Jersey and various building site and general construction contractors and employers, which Agreement was incorporated by reference, for that

---

midnight on April 30, 2007. (Def. Notice of Removal, Ex. F at 61-62, ¶23.10.) The new Collective Bargaining Agreement contains nearly identical language regarding terms for an employer to terminate the agreement and the ongoing renewal of its terms. (Id.)

> [4] As the Third Circuit noted:
>
> [T]he distinction between fraud in the inducement and fraud in the execution is that, 'the former induces a party to assent to something he otherwise would not have; the latter induces a party to believe the nature of his act is something entirely different than it actually is.' [Southwest Admrs., Inc. v.] Rozay's Transfer, 791 F.2d [769,] 774 [(9th Cir. 1986)] (citing 12 WALTER H.E. JAEGER, WILLISTON ON CONTRACTS § 1488, at 332 (3d ed. 1970)). The court went on to explain that, "'fraud in the execution' arises when a party executes an agreement 'with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms.' . . . Fraud in the execution results in the agreement being void ab initio, whereas fraud in the inducement makes the transaction merely voidable." Id. (quoting U.C.C. § 3-305(2)(c)) (other citations omitted).

Sandvik, 220 F.3d at 109-110 (quoting Connors v. Fawn Mining Corp., 30 F.3d 483, 490 (3d Cir. 1994). In the present case, DTE asserts that they were induced into agreeing to the terms of the Short Form Agreement for the limited purposes of securing union labor for their East Brunswick project, but would not have agreed to these terms to bind them for other jobs going forward. This is essentially a claim of fraud in the inducement, which is a challenge that the ensuing contract is voidable.

project," but they did not intend or agree that the terms of the Short Form Agreement should apply beyond that project.  (Compl. at 2, ¶ 7)  Such a "challenge based on fraud in the inducement of the whole contract (including the arbitration clause) is for the arbitrator." Sandvik, 220 F.3d at 105 (citing Matterhorn, Inc. v. NCR Corp., 763 F.2d 866, 868 (7th Cir. 1985) (citation omitted)).  See also  Buckeye Check Cashing, Inc. v. Cardegna, 126 S.Ct. 1204, 1209 (2006) (where plaintiff is challenging the validity of the entire contract, and not the arbitration clause separately, "the issue of the contract's validity is considered by the arbitrator in the first instance").  The Plaintiff's challenge to the validity of the agreement that they signed with Local 595 must, therefore, be referred to arbitration.  Accordingly, the Defendant's Motion to Compel Arbitration is **GRANTED**.

### III.  CONCLUSION

For the reasons stated above, and for good cause shown, the Court grants the Defendant's Motion to Compel Arbitration.  An appropriate form of order will be filed herewith.


Date:   May 17, 2006


   s/Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.